FIDEL GERENA, Guardian of the Minor MARÍA ELADIA GONZÁLEZ known as ROSA GONZÁLEZ, Plaintiff and Appellee, *v.* BARTOLO SUAU, Defendant and Appellant.

No. 3834.   Argued June 18, 1926.—Decided January 21, 1927.

*José Rodríguez* for the appellant.   *García Méndez & García Méndez* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

As an introduction to this case we shall summarize the opinion of the court as follows: Fidel Gerena, as guardian of the minor, María Eladia González, known as Rosa González, filed a complaint in the District Court of Aguadilla against Bartolo Suau to have the said court declare that the said María Eladia González was the natural, acknowledged child of Dolores González and the said Bartolo Suau; that the complaint recited that the said minor, María Eladia González, was born in Porto Rico on the first of March, 1906, being the natural child of Dolores González, who had not brought this suit because she had interests opposed to the

child; that the defendant, Bartolo Suau, at the time of the conception and birth of the said child had relations with her mother and as a consequence of said relations the said child was born; that the defendant and the mother of the minor lived under the same roof in a state of concubinage, and that both had been able to contract marriage without any legal impediment, each of them being then single.

Then followed the recital of some of the acts and conduct of the defendant whereunder acknowledgment was claimed, and the complaint went on to say that the defendant had refused to acknowledge the said minor, despite the efforts made for that purpose. There was also a recital of the prayers of the complaint. The court then set forth the general answer of the defendant and stated that the case was duly heard, and then stated the section of the Civil Code applicable to the case. The child was born in 1906, and hence section 189 of the Civil Code, as then in force, is applicable, as follows:

"A father is obliged to recognize his illegitimate child in the following cases:

"1. Where there be an authentic statement in writing made by him expressly recognizing its paternity.

"2. When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance.

"3. When the mother was known to have lived in concubinage with the father during the pregnancy (sic) or birth of the child, or when the child was born while his parents were engaged to be married, (relaciones amorosas)."

The court held that the case was to be governed by paragraphs 2 and 3 of the said section. Then followed a summary of the quotation made by this court in the case of *Montalvo* v. *Montalvo*, 25 P.R.R. 800, from the decision of the Supreme Court of Spain of June 26, 1903, to the effect that the possession of a status of natural child—

"... is the public reputation which a child bears with reference

to his natural father, where this reputation is formed by direct acts of the father himself or his family, demonstrative of a true acknowledgment, perfectly voluntary, free and spontaneous, inasmuch as the code does not authorize the investigation of paternity except as provided in the Penal Code, nor does it impose, therefore, such acknowledgment against the father's will, although aside from this it is not necessary that said acknowledgment be so ostentatiously made as if the child were a legitimate one, having in mind the ideas and considerations that might exist in social relations; it being, therefore, the province of the courts within this rule merely to appreciate in each case the nature, import and extent of the acts of acknowledgment ascribed to the natural father or to his family.

"That the circumstances in each case must determine the extent and import of the acts indicative of the continuous possession of the status of a natural child."

The court quoted from *Méndez v. Martínez*, 24 P.R.R. 224, where it was said:

"We do not think that it is necessary for a state of concubinage to exist that a man should have no other residence than that of the woman . . . such a condition is not indispensable in a state of matrimony, nor was it for a state of concubinage."

Then the district court said:

"In the present case there was proof which left no doubt in the mind of the court that Bartolo Suau, the defendant, had rented a room for Dolores González and that he lived with her in concubinage, and that such state of affairs existed during the conception and birth of the minor, María Eladia González; that these relations were continuous, she not having had relations with any other man except the defendant during the conception and birth of said minor, nor much before or after these times, Bartolo Suau and Dolores González being both legally qualified without impediment to contract marriage, inasmuch as each of them was unmarried.

"Likewise there is no doubt that the defendant, Bartolo Suau, paid the expenses of medicine and of the midwife who aided the mother of the minor, María Eledia González, and there is no doubt likewise that Bartolo Suau concerned himself about the child, namely, this complainant, that he sought her out to be with her; that he was accustomed to kiss and caress her freely; that he admired her and treated her as his child.

"The defendant presented evidence for the purpose of showing that he did not sleep in the same house as that of the mother of María Eladia González, desiring at the same time to demonstrate that he slept in his own establishment and that he ate his meals at the house of a brother in the city of Lares.

"It is not to be doubted, inasmuch as the evidence was strong on this point, that Bartolo Suau almost every night visited the house that he possessed for his concubine, Dolores González, and that he left it in the late hours of the night or in the morning. The court understanding that, given all the circumstances of this case, among them that the defendant did not have a home of his own, the proof is sufficient to establish the act of concubinage.

"The circumstances that the defendant might have a sleeping place in his establishment is not conclusive evidence of a home of his own, when the testimony of the principal witness, one of his employees, was destroyed in great part by the defendant's own statement.

"The court believes that it has been established in this case that Bartolo Suau, the defendant, privately, and publicly also, recognized María Eladia, known as Rosa, as his own child and called her so in his conversations and concerned himself over her; and that Dolores González, the mother of the complainant, was known to be living in concubinage with the defendant, Bartolo Suau, at the time of the conception and birth of María Eladia, known as Rosa, González."

It is evident from the foregoing summary that while the district court draws up findings of fact to the effect that Bartolo Suau said things and performed acts tending to acknowledge María Eladia González as his daughter, nevertheless an examination of the whole opinion tends to convince us that the court founded its judgment in favor of the complainant on the fact that Bartolo Suau and Dolores González were living in a state of concubinage. The case of *Méndez* v. *Martínez, supra,* was much stronger in its facts. There the putative father practically lived a marital life with the mother of the alleged natural children. In the present case, accepting as true all the statements of the witnesses for the complainant, the evidence does not show anything resembling a marital existence. There was evidence tending to show that Bartolo Suau paid for the living quarters of Dolores

González; that he was with her with great frequency, leaving her house late at night or early in the morning, meaning two or three o'clock in the morning. There was no evidence that he remained with her the whole of a night. There was no evidence that he took his meals with her. There was no evidence of that kind of a life where a man and a woman make a home together without having solemnly entered into the bonds of matrimony, and there was nothing approaching such a state of affairs. It was conceded and recognized by the court that Bartolo Suau, while he did not have what might be called a home, nevertheless slept in his own establishment and took his meals with his brother.

The idea of a state of concubinage is, as we have indicated in *Medina* v. *Heirs of Bird,* 30 P.R.R. 151, a relation similar to or approaching the marital state. It might be quite a little less than a marital state and we should be disposed to recognize a state of concubinage, but a state of concubinage must differ from a relation where a man is merely maintaining a mistress. It is true that Bartolo Suau spent long hours with Dolores González, but we find nothing in the evidence to elevate the relation that Bartolo Suau had with Dolores González to a state of concubinage. Although one or two witnesses make such a conclusion, the record does not disclose anything like a public knowledge of a state of concubinage between these two persons.

There is also a statement of Bartolo Suau, to which we shall refer hereafter, wherein he positively denies having lived in a state of concubinage with anybody, and his denial is supported by the testimony of other persons.

Paragraph 2 of section 189, *supra,* of the Civil Code is as follows:

"When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance."

The Supreme Court of Spain and this court have fre-

quently decided that the evidence, to show such a state of acknowledgment as set out in said paragraph, must be strong. Admitting that Bartolo Suau aided Dolores González at the birth and conception of María Eladia González; that he played with the child and was affectionate to her, and that he helped, to a certain extent, in supporting her, and other similar matters, these do not constitute the strong proof that the law requires. The evidence directly or indirectly does not disclose sufficiently an intention on the part of Bartolo Suau to acknowledge María Eladia as his own.

The following appears on page 58 of the record:

"The parties agree that Bartolo Suau, the defendant in this case, on the witness stand would testify as follows: That his name is Bartolo Suau; that he is of age, single, merchant and a resident of Sóller, Balearic Islands, Spain. That he knew María Eladia González, known as Rosa González, because he was introduced to her in the year 1921 by Fidel Gerena and that he was surprised when Gerena told him that she was his daughter, because before that neither Gerena nor anybody else said so to him. That he knew Dolores González. That in the year 1906 he was living in Lares, Porto Rico; that he lived in his store with his brothers and employees and that no woman was living there, neither in concubinage nor in any other manner; that he had no other home in Lares, and had never lived in concubinage with any person."

While the court has a perfect right to disregard this statement of Bartolo Suau, if convinced by other evidence that the facts to which he deposes were otherwise than he states them, nevertheless this deposition of Bartolo Suau merits a certain amount of consideration. His statements may be impugned as mistaken, but his credibility can not be attacked in the manner of other witnesses. Perhaps the learned counsel for the appellee thought the effect would be different when he permitted this statement to go into the record; nevertheless in the record it is, and it must be given a certain amount of weight. It tends strongly to reduce the force of the statements of the witnesses for the complainant.

Likewise we do not find that Dolores González was ever put on the witness stand, nor was her absence explained.

The whole evidence properly weighed is entirely consistent with the relation whereby a man maintains a mistress and is affectionate to a child born to her contemporaneously, but without sufficient proof of any such acts, public or private, from which an intention to acknowledge should be deduced.

The judgment should be reversed and the complaint dismissed.

Mr. Chief Justice Del Toro took no part in the decision of this case.

Mr. Justice Hutchison dissented.